IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DEANDRE GORDON, | CASE NO. 1:19-CV-01642-DAP |
| Petitioner, | JUDGE DAN AARON POLSTER |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| WARDEN LYNEAL WAINWRIGHT, | **REPORT AND RECOMMENDATION** |
| Respondent. | |

### INTRODUCTION

On July 19, 2019, Petitioner Deandre Gordon, a prisoner in state custody, filed a Petition seeking a writ of habeas corpus under 28 U.S.C. § 2254. (ECF #1). Respondent Lyneal Wainwright, as Warden of the Marion Correctional Institution (hereafter "the State"), filed an Answer/Return of Writ on February 12, 2020. (ECF #8). On August 4, 2020, Mr. Gordon filed a Traverse Brief. (ECF #11). The State did not file a Reply to Mr. Gordon's Traverse Brief.

The District Court has jurisdiction over the Petition under § 2254(a). On July 30, 2019, pursuant to Local Civil Rule 72.2(b)(2), this matter was referred to a Magistrate Judge for preparation of a Report and Recommendation. (Non-document entry of July 30, 2019). The matter was reassigned to me on May 25, 2021, pursuant to General Order 2021-06. (Non-document entry of May 25, 2021).

For the reasons discussed below, I recommend the Petition be **DISMISSED**. I recommend, however, that Mr. Gordon be granted a certificate of appealability limited solely to the Fourth Ground for Relief because reasonable jurists could disagree on the issues raised therein.

1

FACTUAL BACKGROUND

For purposes of habeas corpus review of state court decisions, a state court's findings of fact are presumed correct and can be contravened only if the habeas petitioner shows, by clear and convincing evidence, that the state court's factual findings are erroneous. 28 U.S.C. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir.), *cert. denied*, 571 U.S. 1077 (2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001), *cert. denied*, 535 U.S. 966 (2002). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530.

In its opinion addressing Mr. Gordon's convictions, Ohio's Eighth District Court of Appeals summarized the underlying facts as follows:

> {¶ 2} In March 2015, Gordon was charged in CR–15–594287–A with two counts of aggravated robbery, two counts of felonious assault, and one count of kidnapping. Each count carried one- and three-year firearm specifications. The charges allege that Gordon robbed Tevaughn Darling ("Darling") at gunpoint. In June 2015, Gordon was charged in CR–15–596591–A with intimidation of a witness. The charges allege that Gordon posted on social media an edited version of Darling's statement to the police, making him look like a snitch. Darling received threats because of the video.

> {¶ 3} In June 2015, the state of Ohio ("state") filed a motion to join these two cases and a motion to disqualify Gordon's retained defense counsel. The state argued that the cases should be joined because the offenses are connected and part of the same criminal conduct. The state also argued that Gordon's defense counsel should be disqualified because he would be a material witness in the intimidation case. The trial court granted the state's joinder motion and disqualified defense counsel. The two cases then proceeded to a jury trial. The following evidence was adduced at the joint trial.

> {¶ 4} Darling testified that on Friday, January 9, 2015, he celebrated his 36th birthday with Gordon, his girlfriend, Terri Buckner ("Buckner"), and other friends. Darling has known Gordon since 2002 and thinks of him as his nephew. Upon returning home, Darling noticed that his car had been ransacked and his windows were broken, which was common in his neighborhood.

{¶ 5} Darling invited Gordon to stay over his house. Gordon stayed the remainder of the weekend through Monday afternoon. On Sunday, the two of them made a $1,500 bet on a football game. Darling won the $1,500. Gordon did not have the money to pay Darling. He told Darling that he needed money. Darling testified that Gordon did not have any money while they were celebrating his birthday. Darling paid for his birthday celebration in cash. Darling works in cash businesses, rehabbing houses, junking cars, and scrapping. On some days, he would make $2,500 a day scrapping cars.

{¶ 6} On Monday, January 12, 2015, Buckner took Darling's car to get it repaired. After Buckner left, only Darling and Gordon were in the house. At approximately 5:00 p.m., Gordon asked Darling what he was going to do for him. Darling said he would give Gordon some money. His plan was to give Gordon $1,000 from the bet and keep $500. Gordon then went into the bathroom and came out wearing a hood and carrying a .45 caliber gun. Darling testified that this did not concern him because Gordon always had a .45 caliber gun on him. Gordon told Darling to "give me everything you got." At first, Darling thought Gordon was joking. Gordon then shot Darling in the foot and dragged him from the kitchen into a back bedroom. Gordon took $5,000 out of Darling's dresser drawer and approximately $2,300 out of Darling's pocket. Gordon threatened to kill Darling if he told anyone about the incident. Gordon then stole Darling's rental car, which the police located 0.7 miles from Darling's house.

{¶ 7} Darling then called Buckner to take him to the hospital. When speaking with police officers at the hospital, Darling told them that he was carjacked. The police investigated and found no evidence of a carjacking or a shooting. Darling testified that initially he lied to the police because he did not want to get Gordon in trouble and deal with the consequences of snitching on Gordon, who is a member of the "Loyal Always" gang.

{¶ 8} Darling testified that he changed his mind and decided to tell the police that Gordon shot him and took his money and the rental car. Darling made a statement, which was recorded, to Detective Glenn Daniels ("Detective Daniels") of the Bedford Heights Police Department. When Detective Daniels asked Darling where they could locate Gordon, Darling responded, "[h]e runs with the gang Loyal Always."

{¶ 9} Darling further testified that a video of his recorded statement to the police was posted on Instagram on or about May 21, 2015. The video was edited to make it appear as though he was telling the police information about the Loyal Always gang when he was not. Darling received numerous threats as a result of this video being posted on Instagram. Darling told the prosecutor and the Bedford Heights Police Department about this video. After meeting with the prosecutor, Darling observed Gordon in his car in the parking lot. Gordon rolled down his window and yelled to Darling, "Mr. Officer, Mr. Officer." Darling interpreted Gordon's comments as

being called a snitch. Darling also testified about photos and Facebook comments calling him a rat.

{¶ 10} Buckner testified that she, Darling, Gordon, and other friends went out on Friday, January 9, 2015, to celebrate Darling's birthday. Darling spent a large amount of cash that night. When they returned home, they noticed that the windows to Darling's car were broken. She further testified that Gordon spent the weekend with her and Darling. On Monday, January 12, 2015, around 5:00 p.m., she left Darling and Gordon to get Darling's car repaired. She left a rental car at their home. Approximately one-half hour later, she received a call from Darling telling her that she needed to take Darling to the hospital because Gordon shot him in the foot. When she got home, she observed blood smeared across the floor from the kitchen to the back bedroom. Buckner took Darling to the emergency room. She told the police the same version of events that Darling initially told the officers.

{¶ 11} Buckner also testified about the Instagram post of Darling's statement. She was afraid because they were snitching and snitches get killed. She testified that Gordon's friends were in the Loyal Always gang and she feared they would hurt them both as a result of the Instagram video.

{¶ 12} Detective Daniels testified that he was assigned to Darling's case. As part of his investigation, he presented Darling with a photo array, where Darling selected Gordon as his assailant. The police also went to Darling's home where they discovered a shell casing that was consistent with that of a .45 caliber handgun. Detective Daniels took a video-recorded statement from Darling. Detective Daniels provided the prosecutor with a copy of Darling's statement. Gordon's retained defense counsel testified that on or about May 20, 2015, he showed Darling's recorded statement to Gordon during a private meeting between defense counsel and Gordon.

{¶ 13} On May 27, 2015, Detective Daniels received several phone calls from Darling stating that there is an edited version of his statement to the police that was posted on Instagram on May 22, 2015. The video appears to be a cell phone recording of Darling's statement. Darling indicated to Detective Daniels that he was afraid for his life and this Instagram video has ruined his life. Detective Daniels requested information from Facebook about the video, but he could not identify the source of the post. Detective Daniels testified about the Loyal Always gang. He acknowledged that he is not a gang expert, but has basic knowledge of the gang. He testified that the Loyal Always gang is an offshoot of the former LA Gunners gang. The LA Gunners were raided by the ATF in 2008 because of an investigation into various criminal activity, including murder, firearm violations, rape, assaults.

{¶ 14} At the conclusion of trial, the jury returned a verdict of guilty of all counts of the indictment, including the firearm specifications in Case No. CR-15-594287-A (two counts of aggravated robbery, two counts of felonious assault, and one count of

4

kidnapping). The jury found Gordon not guilty of the charge of intimidation in Case No. CR–15–596591–A.

{¶ 15} That same day, the court proceeded to sentencing. The court merged Counts 1 and 2 (aggravated robbery) and Counts 4 and 5 (felonious assault) for purposes of sentencing. The court then proceeded to sentence Gordon on Counts 1, 3, and 5. On each of Counts 1 and 3, the court sentenced Gordon to four years in prison on the underlying offenses, plus the one- and three-year firearm specifications. On Count 5, the court sentenced Gordon to three years in prison on the underlying offense, plus the one- and three-year firearm specifications. In accordance with R.C. 2929.14(B)(1)(g), the court ordered that the two most serious firearm specifications be served consecutive to each other and the underlying offenses in Counts 1, 3, and 5. The court further ordered that the underlying offenses in Counts 1, 3, and 5 be served concurrently to one another for an aggregate of ten years in prison.

*State v. Gordon*, No. 103494, 2016 WL 4399512 (Ohio Ct. App. Aug. 18, 2016) (footnote omitted)

("*Gordon I*"), *rev'd*, 98 N.E.3d 251 (Ohio 2018) ("*Gordon II*").

## PROCEDURAL HISTORY

### State Court Proceedings and Conviction

On March 26, 2015, Mr. Gordon was charged in a five-count indictment returned by a

Cuyahoga County grand jury. (ECF #8-1, Ex. 1 at PageID 105-08). The charges were as follows:

- **Count 1**: Aggravated Robbery (F1), in violation of Ohio Rev. Code §§ 2911.01(A)(1), with one- and three-year firearm specifications as per Ohio Rev. Code §§ 2941.141(A) and 2941.145(A);

- **Count 2**: Aggravated Robbery (F1), in violation of Ohio Rev. Code §§ 2911.01(A)(3), with one- and three-year firearm specifications as per Ohio Rev. Code §§ 2941.141(A) and 2941.145(A);

- **Count 3**: Kidnapping (F1), in violation of Ohio Rev. Code §§ 2905.01(A)(2), with one- and three-year firearm specifications as per Ohio Rev. Code §§ 2941.141(A) and 2941.145(A);

- **Count 4:** Felonious Assault (F2), in violation of Ohio Rev. Code §§ 2903.11(A)(1), with one- and three-year firearm specifications as per Ohio Rev. Code §§ 2941.141(A) and 2941.145(A); and

- **Count 5**: Felonious Assault (F2), in violation of Ohio Rev. Code §§ 2903.11(A)(1), with one- and three-year firearm specifications as per Ohio Rev. Code §§ 2941.141(A) and 2941.145(A).

(*Id.*). The charges were docketed under Case No. CR-15-594287-A. (*Id.*) On March 31, 2015, Mr. Gordon pled not guilty to all charges. (ECF #8-1, Ex. 2 at PageID 109).

Then, on June 11, 2015, a different Cuyahoga County Grand Jury returned a one-count indictment against Mr. Gordon, charging him with Intimidation of a Crime Victim or Witness (F3), in violation of Ohio Rev. Code § 2921.04(B)(1). (ECF #8-1, Ex. 3 at PageID 110). The charge was docketed under Case No. CR-15-596591-A. (*Id.*) Mr. Gordon pled not guilty on June 16, 2015. (ECF #8-1, Ex. 4 at PageID 111).

Shortly thereafter, on June 29, 2015, the State moved for joinder of both cases against Mr. Gordon. (ECF #8-1, Ex. 5 at PageID 112-16). According to the State's motion, the victim of both the original aggravated robbery, kidnapping, and felonious assault charges and the subsequent intimidation charge was T.D. (*Id.* at PageID 114). The State represented that "[t]he same officers and civilian witnesses will testify in both cases about [Mr. Gordon's] conduct." (*Id.*). Simultaneously, the State also moved to disqualify Mr. Gordon's retained attorney, Aaron Baker. (ECF #8-1, Ex. 6 at Page ID 117-23). As grounds, the State averred that Attorney Baker "is a material witness in case 596591," the intimidation charge. (*Id.* at PageID 117).

On June 30, 2015, the trial court ordered that Mr. Gordon respond to the Motion to Disqualify. (ECF #8-1, Ex 8 at PageID 127). The next day, the trial court granted the motion to join Case Nos. 594287 and 596591. (ECF #8-1, Ex 8 at PageID 125-26).

Mr. Gordon filed a Brief in Opposition to the Motion to Disqualify on July 6, 2015. (ECF #8-1, Ex. 9 at PageID 128-33). The State did not file a Reply, and on July 8, 2015, the trial court

without substantive explanation disqualified Attorney Baker from representing Mr. Gordon. (ECF #8-1, Ex. 10 at PageID 134).

Trial on the combined cases began on August 10, 2015, in the Cuyahoga County Court of Common Pleas. (ECF #8-2 at PageID 38).[1] On August 13, 2015, the jury returned a verdict of guilty on Counts 1 through 5 in Case No. 594287, including the firearms specifications. (ECF #8-1, Ex. 13 at PageID 151-52). The jury returned a verdict of not guilty on Count 1 in Case No. 596591. (ECF #8-1, Ex 12. at PageID 150).

Sentencing on the charges in Case No. 594287 took place on August 13, 2015. (ECF #8-1, Ex. 13 at PageID 151-52). After hearing from the State and counsel for Mr. Gordon, the trial court sentenced Mr. Gordon to ten years of incarceration. (*Id.*)

**Direct Appeal**

On September 10, 2015, Mr. Gordon filed a Notice of Appeal to the Eighth District. (ECF #8-1, Ex. 13 at PageID 153-54). Through new counsel, he filed his Appellant's Brief and Assignments of Error on December 14, 2015, asserting five assignments of error, as follows:

> **First Assignment of Error:** The trial court erred by allowing prejudicial joinder of the charge of intimidation to offenses under CR. 15- 594287.

---

[1]       As noted in *Gordon II*, 98 N.E.3d at 255, Mr. Gordon was represented at trial by Attorney Matthew Bangerter who entered a Notice of Appearance as co-counsel with Attorney Baker on May 26, 2015, and appeared with Attorney Baker at Mr. Gordon's bond hearing on June 9, 2015. *See* ECF #8-2, at PageID 486; *see also* Notice of Appearance as Co-Counsel of May 26, 2015, and Journal Entry of June 9, 2015, Cuyahoga County Common Pleas Court, Case No. CR-15-594287, available at http://cpdocket.cp.cuyahogacounty.us/Search.aspx (last visited August 22, 2022) (Journal Entry attached as Exhibit 1). (In a habeas proceeding, the state-court record includes "both the allegations of the habeas corpus petition and any matter of record pertaining to the case." *Cullen v. Pinholster*, 563 U.S. 170, 188 n.12 (2011) (cleaned up). Accordingly, it is appropriate to consider these docket entries even though they were not part of the record submitted by the State with its Return of Writ.)

**Second Assignment of Error:** The trial court erred by permitting witnesses to provide prejudicially irrelevant testimony which allowed the jury to base its verdict on matters other than evidence of the actual offense charged.

**Third Assignment of Error:** The trial court erred by failing to find the convicted offense to be allied pursuant to R.C. § 2941.25(B).

**Fourth Assignment of Error:** The convictions are against the weight of the evidence.

**Fifth Assignment of Error:** Defense counsel's failure to object to an improper joinder and to the admission of prejudicially irrelevant testimony deprived the defendant of his right to effective assistance of counsel.

(ECF #8-1, Ex. 15 at PageID 164). The State filed its Brief of Appellee on February 8, 2016. (ECF #8-1, Ex. 16 at PageID 191-209). Mr. Gordon filed a Brief in Reply on February 22, 2016. (ECF #8-1, Ex. 17 at PageID 210-19).

On August 18, 2016, the Eighth District issued its Journal Entry and Opinion. (ECF #8-1, Ex. 19 at PageID 220-34; *Gordon I*, 2016 WL 4399512, at *1). With one judge dissenting, the court upheld Mr. Gordon's First Assignment of Error, did not decide any of the other Assignments of Error, and remanded the case for a new trial. (*Id.* at PageID 232). In overturning the trial court's decision to disqualify Attorney Baker, the Eighth District stated as follows:

> While the law generally favors the joining of multiple offenses if the offenses are of similar character, in the instant case, we are presented with the unique circumstance in which the joinder of the indictment prevented the defendant from retaining counsel of choice. The separation of these two cases, which were indicted three months apart, would have allowed Gordon's originally retained counsel to represent Gordon on his robbery case. The Sixth Amendment, as made applicable to the states through the Fourteenth Amendment, guarantees the accused in a state criminal trial the right to counsel. Once Gordon's originally retained counsel was removed from the robbery case, Gordon sustained prejudice that outweighed the benefits of the joinder. Therefore, we find that the trial court committed plain error by joining the two cases for trial.

*Gordon I*, 2015 WL 4399512, at *4 (internal citations omitted).

On October 3, 2016, the State filed a Notice of Appeal with the Supreme Court of Ohio. (ECF #8-1, Ex 19 at PageID 235-36). In its Memorandum in Support of Jurisdiction, the State alleged a single assignment of error, as follows: "A defendant does not suffer prejudice from joinder of indictments based on the disqualification of the defendant's retained counsel absent a showing that the disqualification of counsel was erroneous." (ECF #8-1, Ex. 20 at PageID 238). Mr. Gordon filed a Memorandum Opposing Jurisdiction (ECF #8-1, Ex. 21 at PageID 250-61). On April 19, 2017, the Supreme Court of Ohio accepted jurisdiction over the State's appeal. (ECF #8-1, Ex. 22 at PageID 262).

The State filed its Merit Brief of Appellant on June 27, 2017, in which it repeated the same assignment of error from its Memorandum in Support of Jurisdiction. (ECF #8-1, Ex. 23 at PageID 263-310). On August 16, 2017, Mr. Gordon filed his Merit Brief of Appellee (ECF #8-1, Ex. 24 at PageID 311-30), and was joined in his position by *amicus curiae* Ohio Association of Criminal Defense Lawyers. (ECF #8-1, Ex. 25 at PageID 331-44). The State filed its Reply Brief of Appellant on September 5, 2017. (ECF #8-1, Ex. 26 at PageID 345-64).

On January 30, 2018, the Supreme Court of Ohio reversed the Eighth District's decision and remanded the matter "for further consideration of Deandre Gordon's assignments of error, consistent with the opinion rendered herein." (ECF #8-1, Ex. 27 at PageID 364; *Gordon II*, 98 N.E.3d at 258). The court found that Mr. Gordon had failed to appeal the trial court's disqualification of his counsel; instead, he had only appealed the joinder of the robbery/kidnapping/felonious assault case with the intimidation case. *Gordon II*, 98 N.E.3d at 256. Because he "never objected to the joinder and did not seek severance pursuant to Crim. R. 14 even after the court made its ruling disqualifying [Attorney] Baker," his conviction had to be

9

reviewed under the plain error standard. *Id.* And the court found no plain error because "[i]f [Attorney] Baker was a material witness in both the robbery and intimidation cases, there was no prejudice in trying the cases together." *Id.* at 258.

On April 26, 2018, the Eighth District issued its Journal Entry and Opinion on remand from the Supreme Court of Ohio. (ECF #8-1, Ex. 28 at PageID 371-87; *see also State v. Gordon*, No. 103494, 2018 WL 1976020 (Ohio Ct. App. Apr. 26, 2018) ("*Gordon III*"), *appeal not allowed*, 102 N.E.3d 500 (Ohio 2018) (table). The Eighth District found Mr. Gordon's remaining assignments of error to be without merit. Accordingly, it affirmed his convictions. (ECF #8-1, Ex. 28 at PageID 387).[2]

On May 29, 2018, Mr. Gordon, acting *pro se*, filed a Notice of Appeal and Memorandum in Support of Jurisdiction with the Supreme Court of Ohio. (ECF #8-1, Exs. 30 and 31 at PageID 389-419). Mr. Gordon advanced three propositions of law, as follows:

> **Proposition of Law No 1:** Permitting witnesses in a trial by jury to provide prejudicially irrelevant testimony which allows the jury to base its verdict on matters other than evidence of the actual offense charged violates the Fifth and Fourteenth Amendments to the United States Constitution.

> **Proposition of Law No 2:** A trial court commits reversible error in failing to merge convictions of aggravated robbery, kidnapping, and felonious assault pursuant to R.C. 2941.25(A), when such offenses arose out of one incident against one victim in an effort to obtain money.

> **Proposition of Law No 3:** Defense counsel's failure to object to an improper joinder of trials and to the admission of prejudicially irrelevant testimony deprives a criminal defendant of his right to the effective assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution.

---

[2] On May 1, 2018, the Eighth District issued a *nunc pro tunc* correction to its opinion. (ECF #8-1, Ex. 29, at PageID 388).

(ECF #8-1, Ex. 31 at PageID 392). The State waived its right to file a Memorandum in Response. (ECF #8-1, Ex. 32 at PageID 420). On July 18, 2018, the Supreme Court of Ohio declined to accept jurisdiction. (ECF #8-1, Ex. 33 at PageID 421; *State v. Gordon*, 102 N.E.3d 500 (Ohio 2018) (table).

**Motion to Reopen Direct Appeal**

While Mr. Gordon's 2018 application for a discretionary appeal to the Supreme Court of Ohio was still pending, on June 22, 2018, acting *pro se*, Mr. Gordon filed in the Eighth District an Application for Reopening of Direct Appeal. (ECF #8-1, Ex. 34, at PageID 422-32). Mr. Gordon set forth the following reasons for reopening his direct appeal:

- The trial court erred by failing to merge defendant-appellant's convictions and sentences for firearm specifications pursuant to R.C. 2929.14(d)(l)(b), because the underlying offenses were part of one criminal objective.

- The trial court erred by failing to calculate defendant-appellant's jail-time credit and incorporate such jail-time credit into its sentencing entry.

- Trial counsel provided ineffective assistance in violation of the Sixth Amendment to the United States Constitution by failing to immediately appeal the trial court's removal of defendant-appellant's counsel of choice.

- The trial court denied defendant-appellant's right to counsel of choice in violation of the Sixth Amendment to the United States Constitution.

(*Id.* at PageID 423-26) (cleaned up). The State filed a Memorandum in Opposition to Application for Reopening on June 30, 2018 (ECF #8-1, Ex. 35 at PageID 433-42), and Mr. Gordon filed a Reply on July 17, 2018 (ECF #8-1, Ex. 36 at PageID 443-46). On December 19, 2018, the Eighth District issued a Journal Entry and Opinion denying Mr. Gordon's Application for Reopening. (ECF #8-1, Ex. 37 at PageID 447-56; *State v. Gordon*, No. 103494, 2018 WL 6720654 (Ohio Ct. App. Dec. 19, 2018)).

On January 18, 2019, again acting *pro se*, Mr. Gordon filed a Notice of Appeal to the Supreme Court of Ohio and a Memorandum in Support of Jurisdiction. (ECF #8-1, Exs. 38 & 39 at PageID 457-66). Mr. Gordon advanced four propositions of law, as follows:

- **Proposition of Law No. I:** A trial court errs in failing to merge two three-year sentences for firearm specifications in violation of R.C. 2929.14(D)(1)(b) (now R.C. 2929.14(B)(l)(b)), when the underlying offenses were committed as part of the same act or transaction. Thus, appellate counsel's failure to raise such an issue on direct appeal constitutes ineffective assistance.

- **Proposition of Law No. II:** A criminal defendant's appellate counsel provides ineffective assistance on direct appeal by failing to assign as error the trial court's failure to grant jail-time credit as required by R.C. 2967.191.

- **Proposition of Law No. III:** A criminal defendant's appellate counsel provides ineffective assistance on direct appeal by failing to assign as error trial counsel's failure to immediately appeal the trial court's removal of defendant's retained counsel of choice.

- **Proposition of Law No. IV:** A criminal defendant's appellate counsel provides ineffective assistance on direct appeal by failing to assign as error the trial court's denial of the right to counsel of choice guaranteed by the Sixth Amendment to the United States Constitution.

(ECF #8-1, Ex. 39 at PageID 460).

Once again, the State waived its right to file a Memorandum in Response (ECF #8-1, Ex. 40 at PageID 476). On March 6, 2019, the Supreme Court of Ohio declined to accept jurisdiction over Mr. Gordon's appeal. (ECF #8-1, Ex. 41 at PageID 477; *State v. Gordon*, 118 N.E.3d 259 (Ohio 2019) (table)).

### FEDERAL HABEAS CORPUS

Mr. Gordon's Petition, filed *pro se* in this Court, sets forth seven grounds for relief, as follows:

**First Ground**: The evidence this conviction is based on is against the manifest weight and therefore insufficient in violation of the 5th and 14th Amendment.

**Second Ground**: Ineffective assistance of trial counsel in violation of the 5th, 6th and 14th Amendments.

**Third Ground**: Multiple punishments for Allied Offenses in violation of the 5th Amendment.

**Fourth Ground**: Denied counsel of choice by improper joiner violating the 5th, 6th and 14th Amendments.

**Fifth Ground**: Ineffective Assistance of Appellate Counsel in violation of the 5th, 6th and 14th Amendments.

**Sixth Ground**: Trial counsel was ineffective for his failure to file interlocutory appeal of court's denial of counsel of choice violating 5th, 6th and 14th [Amendments].

**Seventh Ground**: Impermissible prejudicial testimony allowed by the trial court in violation of the 5th and 14th [Amendments].

(ECF #1 at PageID 6, 8, 9, 11, 13, 14). Mr. Gordon requests this Court "vacate [his] sentence and conviction and release this Petitioner." (ECF #1, at PageID 18).

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs Mr. Gordon's petition for writ of habeas corpus. *Lindh v. Murphy,* 521 U.S. 320, 336 (1997). The AEDPA recognizes that "[s]tate courts are adequate forums for the vindication of federal rights" and therefore acts as a "formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow,* 571 U.S. 12, 19 (2013). It "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (internal citation and quotation omitted).

An application for habeas corpus cannot be granted for a person in custody pursuant to a state conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved

13

an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d). Thus, a court may grant habeas relief if the state court arrives at a conclusion that is contrary to a decision of the Supreme Court on a question of law, or if the state court decides a case differently than did the Supreme Court on a materially indistinguishable set of facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Habeas courts review the last explained state-court judgment on the federal claim at issue. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991). The appropriate measure of whether a state court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Williams*, 529 U.S. at 409-11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000), *cert. denied*, 531 U.S. 1089 (2001). For purposes of § 2254(d)(1), clearly established federal law "is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). It includes "the holdings, as opposed to dicta, of [Supreme Court] decisions." *Williams*, 529 U.S. at 412. A state court does not act contrary to clearly established law when the precedent of the Supreme Court is ambiguous or nonexistent. *See, e.g., Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam). A state-court decision is an unreasonable determination of the facts only if the court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528-29 (2003). A petitioner bears the burden to rebut the state court's factual findings "by clear and convincing evidence." 18 U.S.C. § 2254(e)(1). "It bears repeating that even a strong case

for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

The standard is intended to be difficult to meet and reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Id.* at 102-03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979) (Stevens, J., concurring in judgment)). To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Id.* at 103.

## JURISDICTIONAL ISSUES

### Procedural Default

Principles of federalism and comity generally bar federal habeas corpus review of "contentions of federal law . . . not resolved on the merits in the state proceeding due to [the] failure to raise them there as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

> When a petitioner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Procedural default occurs when a petitioner fails to present fairly to the highest state court his claims in a federal constitutional context. *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Anderson v. Harless*, 459 U.S. 4 (1982). Moreover, failure to present a claim to the highest state court deprives a federal court hearing a habeas petition of

15

jurisdiction on that issue. *See McKeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000), *cert. denied*, 532 U.S. 958 (2001).

If the state argues a petitioner has procedurally defaulted his claims, the court must conduct a four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the procedural default may be excused:

> First, the federal court must determine whether there is a state procedural rule that is applicable to the petitioner's claim and whether the petitioner failed to comply with that rule.
>
> Second, the federal court must determine whether the state courts actually enforced the state procedural sanction—that is, whether the state courts actually based their decisions on the procedural rule.
>
> Third, the federal court must consider whether the procedural rule is an adequate and independent state ground on which the state can rely to foreclose federal review of a federal constitutional claim . . . .
>
> Fourth, if the federal court answers the first three questions in the affirmative, it would not review the petitioner's procedurally defaulted claim unless the petitioner can show cause for not following the procedural rule and that failure to review the claim would result in prejudice or a miscarriage of justice.

*Williams v. Coyle*, 260 F.3d 684, 693 (6th Cir. 2001) (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986) (internal citations omitted)), *cert. denied*, 536 U.S. 947 (2002).

A habeas petitioner may secure review of procedurally defaulted claims if cause exists for the failure to follow state procedural rules, as well as actual prejudice from the alleged constitutional violation. "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him[,] '. . . some objective factor external to the defense [that] impeded . . . efforts to comply with the State's procedural rule.'" *Coleman v. Thompson*, 501 U.S. at 753 (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). The habeas petitioner bears the burden to show cause and prejudice. *Hinkle v. Randle*, 271 F.3d

16

239, 245 (6th Cir. 2001). "An attorney's failure to preserve a claim before the state court [does] not constitute cause of excusing procedural default." *Johnson v. Wilson*, 187 F. App'x 455, 458 (6th Cir. 2006), *cert. denied*, 549 U.S. 1218 (2007). And, "[w]hen a petitioner fails to establish cause to excuse a procedural default, a court does not need to address the issue of prejudice." *Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000) (citing *Smith v. Murray*, 477 U.S. 527, 533 (1986)).

Alternatively, absent cause and prejudice, a habeas petitioner may "demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. at 750. The miscarriage of justice exception may be satisfied by submitting evidence showing that a constitutional violation has led to the conviction of one who is actually innocent. *Dretke v. Haley*, 541 U.S. 386, 393 (2004). Actual innocence means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). A claim of actual innocence must be supported by a showing of new, reliable evidence. *See Schlup v. Delo*, 513 U.S. 298, 329 (1995) ("[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt."); *Keith v. Voorhies*, No. 1:06CV2360, 2009 WL 185765, at *7 (N.D. Ohio Jan. 23, 2009) ("To succeed on a claim of actual innocence, a petitioner must offer new reliable evidence showing that a fundamentally unjust incarceration has occurred.") (cleaned up).

**Federal Habeas Claims Based on Alleged Errors of State Law**

A court must also confirm it has jurisdiction over a petitioner's claims for purposes of habeas corpus review. AEDPA establishes two jurisdictional prerequisites for federal habeas corpus review of state convictions. 28 U.S.C. § 2254(a). First, the petitioner must be in state custody. *Id.*

Second, the petitioner must challenge the legality of custody on the ground it is, or was imposed, "in violation of the Constitution or laws or treaties of the United States." *Id.* Indeed, "[t]he writ of habeas corpus is not available to remedy errors of only state law." *Smith v. Morgan*, 371 F. App'x 575, 582 (6th Cir. 2010) (citing 28 U.S.C. § 2254(a)); *see also Norris v. Schotten*, 146 F.3d 314, 328 (6th Cir. 1998) ( "A claim based *solely* on an error of state law is not redressable through the federal habeas process.") (emphasis original).

Nevertheless, habeas relief may be available if an alleged error of state law subjected the petitioner to a "fundamentally unfair" criminal process. *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006). "[T]he category of infractions that violate fundamental fairness is defined very narrowly," and includes only state rulings that "offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Bey v. Bagley*, 500 F.3d 514, 521 (6th Cir. 2007) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1977) (citations omitted)), *cert. denied*, 552 U.S. 1281 (2008); *see also Wright v. Dallman*, 999 F.2d 174, 178 (6th Cir. 1993). As pertinent here, "[f]ederal habeas courts review state court evidentiary decisions only for consistency with due process." *Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001) (citing *Patterson v. New York*, 432 U.S. 197, 202 (1977)). A petitioner bears the burden of proving "the principle of procedure violated by the rule (and allegedly required by due process)" is fundamental. *Bey*, 500 F.3d at 521.

## LAW AND ANALYSIS

### First Ground for Relief

In the First Ground for Relief, Mr. Gordon argues his conviction "is against the manifest weight and therefore insufficient in violation of the 5th and 14th Amendment." (ECF #1, at

PageID 6). His Petition explains further: "The evidence used to support the conviction does not prove all essential elements of the charges against him. When weighing the evidence it more likely supports a finding of not guilty and that the alleged victim fabricated the entire story." (*Id.*).

The State counters that the First Ground for Relief is procedurally defaulted because it was not appealed to the Supreme Court of Ohio. (ECF #8 at PageID 49). In particular, the State notes that although a manifest weight challenge was included in Mr. Gordon's initial appeal to the Eighth District (*Gordon I*), following the Supreme Court of Ohio's remand in *Gordon II*, this claim was not reasserted in the proceedings before the Eighth District that led to *Gordon III*. (*Id.* at PageID 57). Further, when Mr. Gordon sought his *pro* se appeal of the Eighth District's decision in *Gordon III* in the Supreme Court of Ohio, he did not raise a manifest weight or sufficiency of the evidence challenge. (*Id.* at PageID 58). Therefore, the State maintains there was not a fair presentation of the issue to the State courts. (*Id.*) The State also avers that "manifest weight is not cognizable in federal habeas corpus." (ECF #8 at PageID 49).

Mr. Gordon replies that the First Ground for Relief challenges both the manifest weight and the sufficiency of the evidence supporting his convictions. (ECF #11, at PageID 1094). He also claims there was no procedural default because all counsel "quit his case after the Ohio Supreme Court reversed the favorable remand of the 8th District all declining any further representation. This abandonment left this petitioner, who has no legal training whatsoever, to try and file from prison, a pro-se brief with only the legal advise [*sic*] of other untrained inmates." (*Id.*)

I agree with the State that the First Ground for Relief – whether viewed as a manifest weight challenge, a sufficiency of the evidence challenge, or both – is procedurally defaulted. As noted above, Mr. Gordon's Memorandum in Support of Jurisdiction to the Supreme Court of

19

Ohio challenging the Eighth District's decision in *Gordon III* raised three assignments of error, but none of them related to manifest weight or sufficiency of the evidence. (ECF #8-1, Ex. 31 at PageID 389-419). It is well-established that this type of omission constitutes procedural default. *See O'Sullivan*, 526 U.S. at 848 (noting that petitioner's "failure to present three of his federal habeas claims to the Illinois Supreme Court in a timely fashion has resulted in a procedural default of those claims"); *Mosley v. Petro*, No. 5:04CV726, 2006 WL 2640958, at *7 (N.D. Ohio Sept. 13, 2006) ("A petitioner procedurally defaults those claims that he fails to appeal to the Ohio Supreme Court.").

I next turn to whether this default may be excused under the cause-and-prejudice standard outlined above. In seeking a discretionary appeal of the Eighth District's decision in *Gordon III*, Mr. Gordon proceeded *pro se*. His Reply Brief asserts he did so because all counsel "quit his case" and declined any further representation. (ECF #11, at PageID 1094). But Mr. Gordon had no right to counsel in connection with a discretionary appeal to the Supreme Court of Ohio. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("[T]he right to appointed counsel extends to the first appeal of right, and no further."); *Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982) (holding that because the defendant had no constitutional right to the assistance of counsel in pursuit of state supreme court certiorari, "he could not be deprived of the effective assistance of counsel by his retained counsel's failure to file the [certiorari] application timely"); *Ross v. Moffitt*, 417 U.S. 600, 610-12 (1974) (holding that the right to appellate counsel does not extend beyond the first appeal as of right to discretionary appeals to the state's highest court or to petitions for review by the United States Supreme Court); *Smith v. State of Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 433 (6th Cir. 2006) ("There can be a constitutional claim of ineffective assistance of counsel only at a

stage of the proceedings when there is a right to counsel under the Sixth Amendment."); *McNeal v. United States*, 54 F.3d 776 (6th Cir. 1995) ("A defendant is entitled to effective assistance of counsel on the first appeal of his conviction where such an appeal is a matter of right."), *citing Evitts v. Laucey*, 469 U.S. 387, 396 (1985). As such, there is no cause to excuse the procedural default.

Nor does Mr. Gordon demonstrate a fundamental miscarriage of justice if his First Ground for Relief is not considered on its merits. He has not, for example, submitted any new, reliable evidence showing that a constitutional violation led to the conviction of one who is actually innocent. Instead, Mr. Gordon argues that because the jury acquitted him on the intimidation charge, it also should have acquitted him on the remaining charges. (ECF #11 at PageID 1095). But this argument invites a reweighing of the trial evidence and the credibility of witnesses. It is black letter law that a federal habeas court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor was observed at trial. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). Rather, it is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992). A habeas court therefore must defer to the fact finder for its assessment of the credibility of witnesses. *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003).

Additionally, even if procedural default did not bar consideration of Mr. Gordon's First Ground for Relief, it would still not provide a cognizable path forward for him. Claims regarding the manifest weight of the evidence are grounded in state law; thus, they are not cognizable in federal habeas. *See, e.g.*, *Walker v. Engle*, 703 F.2d 959, 969 (6th Cir.) (stating that the Due Process Clause does not provide relief for defendants whose convictions are against the manifest weight of

the evidence, but only for those convicted without sufficient proof to allow a finding of guilt beyond a reasonable doubt), *cert. denied*, 464 U.S. 951 (1983). In *Nash v. Eberlin*, 258 F. App'x 761 (6th Cir. 2007), however, the Sixth Circuit liberally construed a *pro se* habeas petitioner's manifest-weight-of-the-evidence claim to be a sufficiency-of-the-evidence claim. *Id.* at 765 n.4. Therefore, I do the same here.

For a challenge to a conviction to succeed based on alleged insufficiency of the evidence, a habeas court must determine, based on the record at trial, that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). *Jackson* claims face the high burden of two layers of judicial deference. *Coleman v. Johnson*, 566 U.S. 650, 651 (2012). First, the state court on direct appeal may set aside the jury's verdict on insufficient evidence only if no trier of fact could have agreed with the jury. *Id.* And second, the habeas court may only overturn if the state court decision was "objectively unreasonable," but it may not overturn simply because the federal court disagrees with the state court's result. *Id.* (internal quotations and citations omitted).

In *Gordon III*, Mr. Gordon unsuccessfully challenged the evidence underlying his conviction. In rejecting that claim, the Eighth District observed as follows:

> {¶ 22} Gordon argues that Darling's testimony lacks credibility because there were no witnesses to the incident and the gun was never located. He contends the evidence is much more consistent with Darling shooting himself accidentally in the foot, and blaming Gordon for his injuries so he would not be convicted of felony gun possession because of his previous criminal history.

> {¶ 23} Darling testified that he and Gordon had been celebrating his birthday all weekend and Darling admitted to having large amounts of cash on him and paying for Gordon all weekend. Darling testified that Gordon always had a .45 caliber handgun on him. When Darling told Gordon it was time to go home, Gordon went into the bathroom and came out with a black hoody on, pointed the .45 caliber gun at him, and demanded money. Gordon then shot Darling in the foot, dragged him

22

back into the bedroom. Gordon threatened to kill Darling if he told anyone. He then stole Darling's rental car, which was located less than one mile from Darling's house.

{¶ 24} Darling further testified that he has previous drug convictions. Defense counsel questioned Darling about his criminal history on cross-examination. Darling also testified that he initially lied to the police because he did not want to get Gordon in trouble and to deal with the consequences of snitching on a member of the Loyal Always gang.

{¶ 25} Based on the foregoing, it cannot be said that the jury "lost its way" in finding Gordon guilty of aggravated robbery, kidnapping, and felonious assault. The trier of fact was able to judge Darling's credibility and determined him to be credible. This is not the rare case where the trier of fact clearly lost its way and created a manifest miscarriage of justice.

*Gordon III*, 2018 WL 1976020, at *6.

Upon review of the evidence presented and the applicable law, I find sufficient evidence exists to uphold Mr. Gordon's convictions, and that those convictions are not against the manifest weight of the evidence. The Eighth District's analysis of the evidence supporting Mr. Gordon's convictions was not objectively unreasonable. I conclude Mr. Gordon's First Ground for Relief, even if considered on the merits he alleges, does not justify granting his petition.

For the foregoing reasons, Mr. Gordon's First Ground for Relief is procedurally defaulted and otherwise fails on its merits. Accordingly, it should be dismissed.

**Second Ground for Relief**

Mr. Gordon's Second Ground for Relief is that he received ineffective assistance of trial counsel, thereby violating his rights under the Fifth, Sixth, and Fourteenth Amendments. (ECF #1, at PageID 8). The Petition further states: "Counsel at trial failed to object to improper joinder, failed to . . . raise claim that this petitioner was denied counsel of choice by join[d]er and that witnesses were allowed to give hearsay testimony all of which violated his constitutional rights to the due process." (*Id.*)

23

The State acknowledges this basis for relief was properly appealed to the Supreme Court of Ohio, and is thus not procedurally defaulted. (ECF #8 at PageID 49). However, the State maintains this Court must apply the "doubly deferential review standard . . . ." (*Id.*).

To succeed on this claim, Mr. Gordon must establish that his trial counsel's performance was deficient, and that this deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance is deficient when it is objectively unreasonable under prevailing professional norms. *Id.* at 687-88; *see Tackett v. Trierweiler*, 956 F.3d 358, 373 (6th Cir. 2020). Put another way, any error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The test for prejudice is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The *Strickland* standard is highly deferential, and so the petitioner must overcome the presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.

As noted above, Mr. Gordon's Petition alleges three errors by trial counsel: failing to object to improper joinder, failing to raise the alleged denial of counsel of choice, and witnesses giving hearsay testimony. (ECF #1, at PageID 8). However, because no brief accompanied the Petition, further development of these alleged errors was not provided. Mr. Gordon's Traverse does provide additional explication of the failure to object and failure to raise denial of counsel of choice issues, but does not elaborate on the hearsay issue. Accordingly, I treat this argument as waived due to failure to develop adequately. *See McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997) ("Issues

24

adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."); *see also Flores v. Tryon*, No. 6:15-cv-06623-EAW, 2017 WL 3705124, *3 n.4 (W.D.N.Y. Aug. 28, 2017) ("[I]t is not this Court's responsibility to raise and make counsel's arguments for them.").

With regard to the first and second alleged errors by trial counsel, the Supreme Court of Ohio in *Gordon II* analyzed the issue as follows:

*Joinder and disqualification*

{¶ 8} Following the second indictment, Baker filed in the robbery case a document titled "Memorandum to the Court Regarding Continuing Representation of the Defendant." He asserted that it would not be an ethical violation for him to continue to represent Gordon in both cases. He argued that he was not a necessary witness and could stipulate that he had shown the video to Gordon and also argued that if the state demanded his testimony, he would be testifying as to an uncontested issue.

{¶ 9} The state filed two motions: one to join the robbery and intimidation cases for trial and the other to disqualify Baker from representing Gordon. In the joinder motion, the state argued that Gordon's actions in the intimidation case were meant to ensure that Darling did not testify in the robbery case. Therefore, the state argued, the two cases met the criteria for joinder because the offenses were connected or constituted parts of a continuing scheme and were part of a course of criminal conduct. The court granted the motion for joinder in a one-sentence entry.

{¶ 10} The motion to disqualify was filed under both case numbers. It urged the court to remove Baker "due to the fact that Mr. Baker is a material witness in" the intimidation case. The state also argued that "the trier of fact will most definitely struggle with separating testimony from argument as provided by Attorney Baker." Baker, acting on Gordon's behalf, filed a response to the motion to disqualify five days after the court granted the state's motion for joinder. Baker made no argument therein that joinder was improper; he argued that he should be able to represent Gordon on all the charges. But the court granted the state's motion for disqualification—again, in a one-sentence entry.

*Trial and appeal*

{¶ 11} Gordon was represented at trial by Matthew Bangerter, who had filed a notice of appearance as co-counsel in the robbery case before Gordon was charged in the intimidation case. Gordon did not object to the joinder at trial. But before the trial got underway, Bangerter noted a continuing objection to Baker's disqualification.

Bangerter also stated that Gordon wanted the trial to go forward and did not "want to wait anymore for trial." The court responded that the time had passed to appeal the disqualification decision:

> THE COURT: That's fine. We have talked about this. And you know you had a right to appeal that final appealable order and you missed the appellate window.
> MR. BANGERTER: That is correct, your Honor.
> THE COURT: So you know that, right, Mr. Gordon?
> THE DEFENDANT: Yes.
> THE COURT: You had the right to appeal that order, but you waived that right now. So placing an objection on the record has no point, because you waived the right to appeal.

The jury convicted Gordon of all the charges under the robbery indictment but acquitted him of the intimidation charge, and the trial court then imposed the sentence.

{¶ 12} In his appeal to the Eighth District Court of Appeals, Gordon did not raise the trial court's disqualification of Baker as an assignment of error. Instead, he tried to advance the issue by challenging the joinder of the intimidation and robbery cases; Gordon argued that the joinder was error because it led to Gordon's attorney—disqualified as a material witness in the intimidation case—being unable to represent him in the robbery case, denying Gordon his Sixth Amendment right to the counsel of his choice.

{¶ 13} Because Gordon failed to object to the joinder, the court of appeals held that he had waived all but plain error. 2016-Ohio-5407, 2016 WL 4399512, ¶ 18. The court focused its analysis on Crim.R. 14, which requires separate trials if it appears that a criminal defendant would be prejudiced by joinder. A majority of the court concluded that "[b]ased on the unique circumstance of this case," Gordon was prejudiced by the joinder. *Id.* at ¶ 23.

{¶ 14} The appellate court made a key determination—that Baker was not a material witness in the robbery case. *Id.* at ¶ 24. The court concluded that absent the joinder, Gordon's original retained counsel, Baker, could have represented Gordon in his robbery case. Therefore, it determined that Gordon was denied the right to counsel guaranteed by the Sixth Amendment to the United States Constitution. The court held, "Once Gordon's originally retained counsel was removed from the robbery case, Gordon sustained prejudice that outweighed the benefits of the joinder. Therefore, we find that the trial court committed plain error by joining the two cases for trial." *Id.* at ¶ 25. The court declined to address as moot the other assignments of error raised by Gordon, reversed the judgment of the trial court, and remanded the robbery case for a retrial. *Id.* at ¶ 27–28.

{¶ 15} This court accepted the state's discretionary appeal. 148 Ohio St.3d 1442, 2017-Ohio-1427, 72 N.E.3d 656.

## LAW AND ANALYSIS

*Gordon failed to appeal the disqualification of counsel*

{¶ 16} Although it is not specifically raised by Gordon in his appeal, the issue of the deprivation of a defendant's chosen counsel is in the background of this case. This court, echoing the United States Supreme Court, has held that the erroneous deprivation of a defendant's counsel of choice is structural error. *State v. Chambliss*, 128 Ohio St.3d 507, 2011-Ohio-1785, 947 N.E.2d 651, ¶ 18, citing *United States v. Gonzalez–Lopez*, 548 U.S. 140, 150, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006). But because Gordon failed to appeal the disqualification ruling, the disqualification of Gordon's attorney is not squarely before us. "[A] pretrial ruling removing a criminal defendant's retained counsel of choice is a final order, subject to immediate appeal." *Id.* at ¶ 27. Gordon did not immediately–or ever–appeal the disqualification determination.

{¶ 17} Instead, Gordon appealed the joinder of the robbery and intimidation cases, arguing that the joinder of the intimidation case with the robbery case prejudiced Gordon by preventing Baker from representing Gordon on the robbery case.

*Joinder under Crim.R. 13 and 8(A)*

{¶ 18} "The law favors joining multiple criminal offenses in a single trial." *State v. Franklin*, 62 Ohio St.3d 118, 122, 580 N.E.2d 1 (1991). This is because joint trials "conserve state funds, diminish inconvenience to witnesses and public authorities, and avoid delays in bringing those accused of crime to trial." *Bruton v. United States*, 391 U.S. 123, 134, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Pursuant to Crim.R. 13, "[t]he court may order two or more indictments or informations or both to be tried together, if the offenses * * * could have been joined in a single indictment or information." Crim.R. 8(A) provides the standards for determining whether separate offenses can be charged in the same indictment:

> Two or more offenses may be charged in the same indictment * * * if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct.

{¶ 19} Gordon's alleged attempt to intimidate Darling from testifying about the robbery-case connects the robbery-case charges with the intimidation charge. Also, the robbery case and intimidation case together form a course of criminal conduct. Thus, pursuant to Crim.R. 8(A), the crimes could have been charged in the same indictment. Therefore, the trial court properly joined the two indictments for trial under Crim.R. 13.

*Crim.R. 14 requires separate trials when joinder would result in prejudice*

{¶ 20} But even if indictments are initially correctly joined under Crim.R. 8(A) and 13, a trial court should order separate trials pursuant to Crim.R. 14 if it appears the defendant is prejudiced by the joinder. Crim.R. 14 states:

> If it appears that a defendant or the state is prejudiced by a joinder of offenses * * * in an indictment, information, or complaint, or by such joinder for trial together of indictments, informations or complaints, the court shall order an election or separate trial of counts * * * or provide such other relief as justice requires.

{¶ 21} It is the defendant's burden to demonstrate that joinder is prejudicial:

> A defendant claiming error in the trial court's refusal to allow separate trials of multiple charges under Crim.R. 14 has the burden of affirmatively showing that his rights were prejudiced; he must furnish the trial court with sufficient information so that it can weigh the considerations favoring joinder against the defendant's right to a fair trial, and he must demonstrate that the court abused its discretion in refusing to separate the charges for trial.

*State v. Torres*, 66 Ohio St.2d 340, 421 N.E.2d 1288 (1981), syllabus. Here, Gordon never objected to the joinder and did not seek severance pursuant to Crim.R. 14 even after the court made its ruling disqualifying Baker. He asserted error only in his appeal.

*Plain-error review is appropriate in this case*

{¶ 22} Since Gordon neither sought severance pursuant to Crim.R. 14 nor objected to the joinder, we do not review the trial court's decision for an abuse of discretion; instead, as the appellate court correctly determined, on appeal we apply a plain-error standard of review to the trial court's decision regarding joinder.

{¶ 23} "Notice of plain error * * * is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

To successfully assert that a trial court committed plain error, a defendant must show an error that constitutes an obvious defect in the trial proceedings and demonstrate that the error affected the outcome of the trial. *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22.

*There was no plain error*

{¶ 24} The appellate court based its finding of error on the prejudice to Gordon that it determined resulted from the joinder of the two cases. It held that "[o]nce Gordon's originally retained counsel was removed from the robbery case, Gordon sustained prejudice that outweighed the benefits of the joinder." 2016-Ohio-5407, 2016 WL 4399512, at ¶ 25.

{¶ 25} The appellate court's finding of prejudice appears to be based upon its conclusion that Gordon had been improperly denied counsel of his choice in the robbery case. Gordon urges us to uphold this prejudice finding based upon the premise that the erroneous deprivation of the right to counsel was structural error, which requires no showing of actual prejudice.

{¶ 26} But the issue that had been appealed and that was actually before the appellate court was not that the disqualification of counsel was error but went to whether improper joinder amounted to prejudice. And to succeed on this claim, Gordon had to meet the second part of the plain-error analysis: that the error in joining the offenses affected the outcome of the trial. The appellate court did not consider whether the error affected the outcome; it simply presumed prejudice without undertaking the required analysis. This court, however, has "rejected the notion that there is any category of forfeited error that is not subject to the plain error rule's requirement of prejudicial effect on the outcome." *Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, at ¶ 24, citing *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 23.

{¶ 27} But we need not reach this issue of whether improper joinder affected the outcome of the trial and was thus prejudicial, because the trial court did not err in joining the two offenses.

{¶ 28} If Baker was a material witness in both the robbery and intimidation cases, there was no prejudice in trying the cases together. A material witness is "[a] witness who can testify about matters having some logical connection with the consequential facts, esp. if few others, if any, know about those matters." *Black's Law Dictionary* 1839 (10th Ed.2014). The great leap taken by the appellate court, without any analysis, is that although Baker was a material witness in the intimidation case, he "was not a material witness [in] the robbery case." 2016-Ohio-5407, 2016 WL 4399512, at ¶ 24. The appellate court did not consider that Gordon's alleged attempts at intimidation of Darling would have been admissible in the robbery case—"[e]vidence of conduct

designed to impede or prevent a witness from testifying is admissible to show consciousness of guilt." *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 68. The posting of Darling's police interview on Instagram in an attempt to intimidate him from testifying would certainly be relevant to show Gordon's consciousness of guilt in the robbery case under Evid.R. 404(B). And only Baker would be in a position to testify that Gordon—and only Gordon—had been shown the interview video on Baker's computer the day before an edited version had shown up on Instagram. Because evidence of the attempted intimidation was admissible in the robbery case and Baker was a material witness in the intimidation case, he also was a material witness in the robbery case.

{¶ 29} Neither the trial court's joinder of the two cases nor its failure to sua sponte separate the two cases for trial pursuant to Crim.R. 14 constituted plain error. The trial court could reasonably have determined that Baker should be disqualified from both cases even without the joinder. There was thus no obvious defect in the trial proceedings that affected the outcome of the trial. The trial court's decision did not result in a "manifest miscarriage of justice," *Long*, 53 Ohio St.2d 91, 372 N.E.2d 804, at paragraph three of the syllabus.

## CONCLUSION

{¶ 30} It is well settled that the law favors joinder. Gordon failed to object to the joinder of the robbery case and the intimidation case, and there was no plain error in joining the two cases. Accordingly, we reverse the judgment of the court of appeals. Because the court of appeals did not reach Gordon's remaining assignments of error, we remand this cause to the court of appeals for consideration of those issues.

*Gordon II*, 98 N.E.3d at 254-58 (citations omitted).

Because the Supreme Court of Ohio adjudicated Mr. Gordon's claims regarding failure to object to joinder and disqualification on their merits, this Court must give AEDPA defense to those determinations. *Perkins v. McKee*, 411 F. App'x 822, 828 (6th Cir. 2011). Further, this Court is bound by a state court's interpretation of state law. Thus, the Supreme Court of Ohio's finding that joinder of the two cases against Mr. Gordon was permissible under Ohio procedural law will not support a claim that his trial counsel was ineffective in failing to object to joinder. *See Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010) (stating that counsel cannot be ineffective for failing to raise a meritless issue) (citing *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). Likewise,

30

because joinder of the two criminal cases against Mr. Gordon was permissible under Ohio law, it follows that disqualification of Mr. Gordon's retained counsel on the original charges – who was found to be a material witness regarding the intimidation charge, and who thus could not simultaneously act as defense counsel and a witness at a jury trial, *see* Rule 3.7(a) of the Ohio Rules of Professional Conduct[3] – cannot give rise to an ineffective assistance of counsel claim grounded in trial counsel's failure to object to Mr. Gordon's alleged denial of counsel of choice.

For all of these reasons, I find no merit to the Second Ground for Relief and recommend that it be dismissed.

**Third Ground for Relief**

In his Third Ground for Relief, Mr. Gordon argues he received multiple punishments for allied offenses "of similar import with the same animus and all occurring in this same incident," which he says violates the Fifth Amendment. (ECF #1, at PageID 9). The State acknowledges this basis for relief was properly appealed to the Supreme Court of Ohio, and thus is not defaulted.

---

[3]    In pertinent part, this rule provides as follows:

**Rule 3.7 - Lawyer As Witness**
(a)    A lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness unless one or more of the following applies:
(1)    the testimony relates to an uncontested issue;
(2)    the testimony relates to the nature and value of legal services rendered in the case;
(3)    the disqualification of the lawyer would work substantial hardship on the client.

Ohio R. Prof. Cond. 3.7. Comment 1 to the rule further notes that "[c]ombining the roles of advocate and witness can prejudice the tribunal and the opposing party and can also involve a conflict of interest between the lawyer and client." *Id.* cmt. 1.

(ECF #8 at PageID 50). But because it only involves a question of state sentencing law, the State maintains this ground is not reviewable in federal habeas corpus. (*Id.*).

It is well-settled that "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (internal quotations omitted). A federal habeas court may not reexamine state court determinations based solely in state law. *Bradshaw v. Richey*, 546 U.S. 74, 76, (2005). Rather, a state court's interpretation of state law "binds a federal court sitting in habeas corpus." *Id.* Thus, federal courts may not issue a writ of habeas corpus on the basis of a perceived error of state law but are limited only to deciding whether a petitioner's conviction violated the Constitution, laws, or treaties of the United States. *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *see also* 28 U.S.C. § 2254(a).

Moreover, to the extent Mr. Gordon's arguments could be construed as a challenge under the Double Jeopardy Clause of the Fifth Amendment, his claim fails on the merits.  The Double Jeopardy Clause of the Fifth Amendment provides that "no person . . . shall . . . be subject for the same offense to be twice put in jeopardy of life or limb . . ." and has been incorporated against the states through the Fourteenth Amendment. *See Benton v. Maryland*, 395 U.S. 784, 794 (1969). The clause "protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *Brown v. Ohio*, 432 U.S. 161, 165 (1977) (internal quotation omitted). Relevant to this ground for relief, protection against multiple punishments is at issue.

With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause only "prevent[s] the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366 (1983); *see White v. Howes*, 586 F.3d 1025, 1035

32

(6th Cir. 2009) ("The current jurisprudence allows for multiple punishment for the same offense when the legislature has clearly indicated its intent to so provide, and recognizes no exception for necessarily included, or overlapping offenses."). "When two different statutory provisions authorize punishment for the same act, '[t]he first step is to determine whether [the legislature] intended to punish cumulatively the same conduct which violates two statutes.'" *Volpe v. Trim*, 708 F.3d 688, 696 (6th Cir. 2003) (quoting *United States v. Johnson*, 22 F.3d 106, 107-08 (6th Cir. 1994)). Whether a conviction violates the Double Jeopardy Clause is a matter of legislative intent and a habeas court is bound by a state court's determination of whether the state legislature intended multiple punishments for a single criminal incident. *Id.* at 696-97; *see also Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989) ("[w]hen assessing the intent of a state legislature, a federal court is bound by a state court's construction of that state's own statutes.") (citing *Hunter*, 459 U.S. at 368).

I conclude that Mr. Gordon's assertion that "the entire conduct charged in the robbery case should have all merged into a single conviction with a single sentence as the animus was a single one" (ECF #11 at PageID 1102) is a matter of state law and thus not cognizable under § 2254. *Kipen v. Renico*, 65 F. App'x 958, 959 (6th Cir. 2003) (citing *Estelle*, 502 U.S. at 68). In *Gordon III*, the Eighth District provided the following analysis of Mr. Johnson's same argument regarding multiple punishment for allied offenses:

> {¶ 10} In the third assignment of error, Gordon argues that the trial court should have merged his aggravated robbery, kidnapping, and felonious assault convictions because they all arose out of the same incident and were part of the same animus—to obtain Darling's money. We note that while Gordon requested the merger of all offenses, the trial court merged the two aggravated robbery counts with each other and the two felonious assaults with each other.
>
> {¶ 11} R.C. 2941.25, the allied offenses statute, provides:

33

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately_ or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 12} In *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, the Ohio Supreme Court explained that when a defendant's conduct constitutes a single offense, the defendant may only be convicted and sentenced for that offense. *Id.* at ¶ 24. However, when the conduct "supports more than one offense, the court must determine whether the offenses merge or whether the defendant may be convicted of separate offenses." *Id.* The *Ruff* court stated:

As a practical matter, when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions when defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation?

*Id.* at ¶ 31.

{¶ 13} If the answer is "yes" to any of the above, the defendant may be convicted of all of the offenses separately. *Id.* at ¶ 25. The court explained that two or more offenses are dissimilar within the meaning of R.C. 2941.25(B) "when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id.* at paragraph two of the syllabus. Two or more offenses of dissimilar import are not subject to merger because the harm to each victim is "separate and distinct." *Id.* at ¶ 26.

{¶ 14} Gordon contends that the harm to Darling was not separate and distinct because the use of the gun was the same force for the aggravated robbery and felonious assault charges and the same injury formed the basis for both offenses. With regard to the kidnapping, he contends the "dragging" was not a separate harm from the aggravated robbery or the felonious assault.

{¶ 15} We note that this court has not merged offenses where the conduct did not result in separate, identifiable harms if the offenses were committed with a separate animus. *State v. Sutton*, 8th Dist. Cuyahoga Nos. 102300 and Cuyahoga Nos. 102302,

2015-Ohio-4074, ¶ 60–62. In *State v. Bailey*, 8th Dist. Cuyahoga No. 100993, 2014-Ohio-4684, we stated that

> the issue of whether two offenses are allied depends not only on whether the two crimes were committed in the same act, but also with a single state of mind. The Ohio Supreme Court has defined the term "animus" to mean "purpose or, more properly, immediate motive." *State v. Logan*, 60 Ohio St.2d 126, 131, 397 N.E.2d 1345 (1979). Because animus is often difficult to prove directly, it may be inferred from the surrounding circumstances. When "an individual's immediate motive involves the commission of one offense, but in the course of committing that crime he must, a priori, commit another, then he may well possess but a single animus, and in that event may be convicted of only one crime." *Id.*

> Thus, when determining whether two offenses were committed with a separate animus, the court must consider (1) whether the first offense was merely incidental to the second offense or whether the defendant's conduct in the first offense demonstrated a significance independent of the second, and (2) whether the defendant's conduct in the first offense subjected the victim to a substantial increase in the risk of harm apart from that involved in the second offense. *State v. Shields*, 1st Dist. Hamilton No. C-100362, 2011-Ohio-1912, ¶ 17.

*Id.* at ¶ 34–35.

{¶ 16} In the instant case, we cannot say that the trial court erred in refusing to merge the aggravated robbery with felonious assault because the record contains evidence that establishes the crimes were committed with separate animus. This court has previously held that where a defendant uses greater force than necessary to complete aggravated robbery, he shows a separate animus. *Bailey* at ¶ 37. Darling testified that Gordon came out of the bathroom wearing a hood and carrying a .45 caliber gun. Gordon told Darling to "give me everything you got." At first, Darling thought Gordon was joking. Gordon then shot Darling in the foot and dragged him from the kitchen into a back bedroom. Gordon took $5,000 out of Darling's dresser drawer and approximately $2,300 out of Darling's pocket. Gordon threatened to kill Darling if he told anyone about the incident. The shooting and removal of Darling from the kitchen and into the back bedroom were not necessary to complete the robbery. Therefore, the felonious assault and kidnapping were not merely incidental to the aggravated robbery and the convictions do not merge.

*Gordon III*, 2018 WL 1976020, at *4-*5.  The Eighth District analyzed Mr. Gordon's claim under

Ohio's allied offenses statute and "that analysis is entirely dispositive of the federal double

jeopardy claim"; furthermore, AEDPA deference applies. *Jackson v. Smith*, 745 F.3d 206, 210 (6th Cir. 2014). Finally, to the extent Mr. Gordon claims the Eighth District's decision was based on an unreasonable determination of the facts in light of the evidence presented, Mr. Gordon has not overcome the presumption of correctness applied to a state court's determination of facts by clear and convincing evidence.

I conclude the Third Ground for Relief is based solely on state law and therefore is not cognizable in federal habeas review. Therefore, the Third Ground for Relief should be dismissed.

**Fourth Ground for Relief**

Mr. Gordon's Fourth Ground for Relief alleges he was denied the counsel of choice by improper joinder of criminal charges, thereby violating the Fifth, Sixth and Fourteenth Amendments. (ECF #1, at PageID 11). His Petition further explains: "The trial court joined 2 unrelated charges to bar this petitioner's counsel of choice. [T]he unrelated charge ultimately the jury found to be without merit making it clear this petitioner's constitutional rights were violated." (*Id.*).

According to the State: "Ground four is procedurally defaulted because Gordon failed to fairly present the issue of disqualification of counsel and joinder was reviewed for plain error. Moreover, joinder is not cognizable in federal habeas corpus." (ECF #8, at PageID 50) (record citations omitted).

I conclude the arguments Mr. Gordon advances in the Fourth Ground for Relief merely re-plow the issues considered in the Second Ground for Relief, albeit without framing them as ineffective assistance of counsel. In this context, that is a distinction without a difference. The Supreme Court of Ohio reviewed Mr. Gordon's claims regarding alleged improper disqualification of his preferred counsel and alleged improper joinder of charges, and ultimately decided that

under Ohio Criminal Rule 8(A) "the crimes could have been charged in this same indictment," meaning they could be properly joined for trial under Ohio Criminal Rule 13, *Gordon II*, 98 N.E.2d at 256, and that "[t]he trial court could reasonably have determined that [Attorney] Baker should be disqualified from both cases even without the joinder," *id.* at 258.

Sixth Circuit caselaw holds that "[d]enial of a motion for severance is a matter of state law and does not serve as ground for federal relief unless the joinder was so prejudicial that the trial was rendered fundamentally unfair." *Johnson v. Bagley*, No. 1:02-CV-220, 2006 WL 5388021, at *12 (S.D. Ohio Apr. 24, 2006) (citing *Corbett v. Bordenkircher*, 615 F.2d 722, 724-26 (6th Cir. 1980)), *aff'd*, 544 F.3d 592 (6th Cir. 2008). To obtain habeas relief arising from alleged improper joinder, the petitioner "must establish not merely that the joinder of the offenses in a single trial was an abuse of the trial court's discretion, but that the joinder violated his federal constitutional rights." *Id.* (citing *Lucero v. Kerby*, 133 F.3d 1299, 1313 (10th Cir. 1998)). "Petitioner must go beyond the potential for prejudice and prove that actual prejudice resulted from the events as they unfolded during the joint trial." *Id.* (citing *Herring v. Meachum*, 11 F.3d 374, 378 (2d Cir. 1993)).

Mr. Gordon makes no such showing here. Further, on review of the entirety of the record, I conclude that his trial was not so unfair that it violated Mr. Gordon's rights under the Fifth, Sixth and Fourteenth Amendments.

Sixth Circuit caselaw also recognizes that, while the Sixth Amendment implicitly protects the accused's right to counsel of choice, "it is beyond peradventure that such right is not absolute." *Wilson v. Mintzes*, 761 F.2d 275, 280 (6th Cir. 1985). For example, the right to be represented by counsel of one's choice must yield to the trial court's "independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal

37

proceedings appear fair to all who observe them." *Wheat v. United States*, 486 U.S. 153, 160 (1988).

In *Wheat*, the Supreme Court established that district courts must "recognize a presumption in

favor of petitioner's choice of counsel," but that presumption "may be overcome not only by a

demonstration of actual conflict but by a showing of a serious potential for conflict." *Id.* at 164.

Upon review of the record, I conclude the trial court's counsel disqualification of Attorney

Baker was warranted because of an actual or potential conflict arising from his dual role as an

advocate and potential witness on a material issue – the video recording that was the source of the

Instagram post forming the basis for the intimidation charge. Indeed, as the Supreme Court of

Ohio noted in *Gordon II*, Attorney Baker was a material witness in the intimidation case because

he would have been able "to testify that Gordon—and only Gordon—had been shown the interview

video on Baker's computer the day before an edited version had shown up on Instagram." *Gordon

II*, 98 N.E. at 258. As noted earlier, allowing Attorney Baker to testify on a material issue in a case

where he was also serving as his client's advocate would have contravened Rule 3.7 and raised

concerns about conflicts of interest between Attorney Baker and Mr. Gordon.

Trial courts assess potential conflicts of interest between counsel and a defendant "not with

the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial context when

relationships between parties are seen through a glass, darkly" and, because "[t]he likelihood and

dimensions of nascent conflicts of interest are notoriously hard to predict," the trial court's

assessment of even a potential conflict is accorded "broad latitude." *Wheat*, 486 U.S. at 162-63.

Under this deferential standard, I cannot conclude the trial court's disqualification of Attorney

Baker violated Mr. Gordon's federal constitutional rights. My conclusion in this regard is

reinforced by the fact that, at trial, Mr. Gordon was represented by another retained attorney who

had been serving as co-counsel with Attorney Baker in Case No. 594287 dating back to May 26, 2015 – two weeks before Mr. Gordon's June 9, 2015 bond hearing. *See* fn.1, *supra*.

For all of these reasons, I recommend the Fourth Ground for Relief also be dismissed.

**Fifth Ground for Relief**

Again alleging a violation of his Fifth, Sixth, and Fourteenth Amendment rights, Mr. Gordon argues in his Fifth Ground for Relief that he received ineffective assistance of appellate counsel. (ECF #1, at PageID 13). The Petition elaborates as follows:

> Appellate counsel failed to raise on direct appeal merger of gun specs, [f]ailed to raise lack of jail time credit owed and failed to raise trial counsel's ineffectiveness for not filing an interlocutory appeal of the court's order depriving this petitioner his counsel of choice and issues related to counsel of choice denial[.]

(*Id.*). For all intents and purposes, these are the same arguments Mr. Gordon made in his Rule 26 Application, which the Eighth District declined to grant. (ECF #8-1, Ex. 37 at PageID 447-56; *State v. Gordon*, No. 103494, 2018 WL 6720654 (Ohio Ct. App. Dec. 19, 2018)). The State counters that the Fifth Ground for Relief "is reviewable in habeas corpus as to the question presented, i.e. ineffective assistance of appellate counsel, but not to the underlying merits." (ECF #8, at PageID 50).

In assessing the effectiveness of appellate counsel, certain principles are well established. For example, if appellate counsel fails to assert a claim on appeal, such failure is not a constitutional violation unless such failure was so ill-advised as to have caused petitioner to effectively have been without counsel. *Burton v. Renico*, 391 F.3d 764, 773 (6th Cir. 2004). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Smith v. Robbins*, 528 U.S. 259, 288 (2000).

Stated differently, a petitioner cannot succeed on a claim of ineffective assistance of appellate counsel by reason of failure to raise a particular assignment of error on appeal, unless there is a reasonable probability that such assignment of error would have succeeded at the time that counsel failed to raise it. *McFarland v. Yukins*, 356 F.3d 688, 699–700 (6th Cir. 2004). When appellate counsel fails to raise a claim lacking in merit, that failure cannot amount to ineffective assistance of appellate counsel. *Willis v. Smith*, 351 F.3d 741, 746 (6th Cir. 2003). To succeed on a claim of ineffective assistance of appellate counsel, a petitioner must demonstrate that but for appellate counsel's deficient performance, there is a reasonable probability that the petitioner would have prevailed on appeal. *Mapes v. Tate*, 388 F.3d 187, 194 (6th Cir. 2004).

*Failure to Raise Merger of Gun Specifications*

Mr. Gordon's first sub-issue under the Fifth Ground is that appellate counsel did not challenge the trial court's decision not to merge the one- and three-year gun specifications or run their sentences concurrently. (ECF #11 at PageID 1108). In denying Mr. Gordon's Application for Reopening, the Eighth District addressed this sub-issue as follows:

> Gordon's first argument is that the trial court erred in imposing two consecutive three-year sentences for firearm specifications. Gordon relies upon a former provision of the Ohio Revised Code, Section 2929.14(D)(1)(b) that provided that a court shall not impose more than one prison term on an offender for firearm specifications for felonies committed as part of the same act or transaction. Gordon further cites *State v. Stevens*, 179 Ohio App.3d 97, 2008-Ohio-5775, 900 N.E.2d 1037 (2d Dist.), in which the court granted an application to reopen on the strength of division (D)(1)(b). However, this reliance is misplaced.

> Effective September 9, 2008, the General Assembly enacted R.C. 2929.14(D)(1)(g) that provides in pertinent part as follows:

>> If an offender is convicted of * * * two or more felonies, if one or more of those felonies are * * * aggravated robbery, felonious assault, or rape, and if the offender is convicted of * * * a specification of the type described under division (B)(1)(a) of this section [which includes

40

the three-year firearm specification] in connection with two or more of the felonies, the sentencing court shall impose on the offender the prison term specified under division (B)(1)(a) of this section for each of the two most serious specifications of which the offender is convicted * * *.

Thus, this statute required the trial court judge to impose consecutive three-year firearm specifications. Moreover, the General Assembly subordinated division (D)(1)(b) to division (D)(1)(g). Today, division (D)(1)(b) is incorporated into R.C. 2929.14(B)(1)(b), and it is still subordinated to the above-quoted statutory provision that is now R.C. 2929.14(B)(1)(g). Accordingly, the judge properly sentenced Gordon, and his argument is baseless.

*Gordon II*, 2018 WL 6720654, at *3.

Because the Eighth District concluded Mr. Gordon's argument on this issue was "baseless," appellate counsel's failure to raise it in Mr. Gordon's original appeal cannot constitute ineffective assistance of appellate counsel. Furthermore, the determination of a sentence is exclusively a matter of state law that cannot be assessed on federal habeas corpus review. "More particularly, a claim that the trial court violated state law when sentencing a prisoner . . . is not cognizable in a federal habeas corpus proceeding." *Wilson v. Warden, Ross Corr. Inst.*, No. 1:12CV1554, 2013 WL 6859869, at *19 (N.D. Ohio Dec. 30, 2013 ) (internal quotation omitted); *see also Twitty v. Warden*, No. 3:03CV335, 2006 WL 2728694, at *21 (S.D. Ohio Sept. 22, 2006 ) (allegation that the trial court erred by separating gun specifications per Ohio Rev. Code § 2929.14 is a state law claim and not cognizable on federal habeas review).

*Failure to Raise Lack of Jail Time Credit*

Mr. Gordon's second sub-issue under the Fifth Ground is that appellate counsel should have challenged a decision by the trial court not to grant jail time credit. (ECF #11 at PageID 1108). In denying Mr. Gordon's Application for Reopening, the Eighth District addressed this sub-issue as follows:

Next, Gordon argues that his appellate counsel failed to argue that the trial court erred by not granting jail-time credit as required by R.C. 2929.19(B)(2)(f) and 2967.191. A review of the sentencing entry reveals that the judge did not grant jail-time credit. Nevertheless, Gordon has not been prejudiced by the court's omission. R.C. 2929.19(B)(2)(f)(iii) grants the trial court continuing jurisdiction to correct any error not previously raised at sentencing in granting jail-time credit. Thus, Gordon can still obtain his credit by filing a proper motion. Gordon complains that it is unreasonable to compel him to file a motion when his appellate counsel could have and should have done it for him. Given the ease with which such could be done and the number of such motions this court has seen, the court rejects Gordon's argument. He has not been permanently harmed; there is no prejudice.

*Gordon II*, 2018 WL 6720654, at *3.

Because the Eighth District concluded that Mr. Gordon could still obtain the requested relief by filing a proper motion in the trial court, which has continuing jurisdiction to consider the issue, Mr. Gordon has not been "permanently harmed." Accordingly, appellate counsel cannot be faulted for not raising this issue. Furthermore, because this matter relates exclusively to state sentencing law, it is not cognizable in this federal habeas proceeding.

*Failure to File an Interlocutory Appeal and Failure to Raise Issues Related to Choice of Counsel*

Mr. Gordon's third and fourth sub-issues under the Fifth Ground are that appellate counsel should have raised trial counsel's ineffectiveness for not filing an interlocutory appeal of the court's order disqualifying Attorney Baker, and "issues related to counsel of choice denial." (ECF #11 at PageID 1108). At bottom, both of these issues relate to the same core issue – the disqualification of Attorney Baker – and, as the Eighth District noted in rejecting Mr. Gordon's Rule 26 Application for Reopening, these arguments are "not well founded because the Supreme Court of Ohio has determined that the trial court properly disqualified his attorney." *Id.* Because Mr. Gordon's underlying position on these issues was not meritorious, his appellate counsel's failure to raise these issues on appeal cannot be said to rise to the level of ineffective assistance.

For all of the foregoing reasons, I concluded that the Fifth Ground for Relief should be dismissed.

**Sixth Ground for Relief**

Once again alleging a violation of Fifth, Sixth, and Fourteenth Amendment rights, Mr. Gordon's Sixth Ground for Relief is that his trial counsel was ineffective because he did not pursue an interlocutory appeal of the trial court's decision to disqualify Mr. Gordon's retained counsel. (ECF #1 at PageID 13). The Petition further avers:

> When the court made this improper ruling, Ohio law allowed and even required that an interlocutory appeal be taken of that ruling and none was taken which prejudiced this appellant[']s trial by counsel of choice and even later causing reversal of a ground sustained by the appellate court. This violated this petitioner[']s constitutional rights in numerous ways.

(*Id.*) The State responds as follows: "The point is that the underlying issue regarding counsel of choice is meritless under state law as to joinder and admissibility of evidence in both the robbery and intimidation offenses so that an interlocutory appeal would likewise meritless." (ECF #8 at PageID 96.) Mr. Gordon's reply is that "the Ohio Supreme Court ultimately punished this petitioner because trial court's error of not [filing] an interlocutory appeal of the trial court's denial of counsel of choice and due to that error, the court reversed a favorable decision of the 8th district court of appeals." (ECF #11 at PageID 1110).

I conclude there was no ineffective assistance of counsel for failing to challenge the trial court's disqualification of Attorney Baker on an interlocutory basis. As has been noted repeatedly above, the disqualification of Attorney Baker was necessary because of his status as a material witness on the intimidation charge. *Gordon II*, 98 N.E.3d at 258. That being the case, even an interlocutory challenge to the disqualification error would not have been meritorious; hence, there

could be no ineffective assistance in not raising an unmeritorious argument. *See Burton*, 391 F.3d at 774 (6th Cir. 2004) (the required showing of prejudice for an ineffective assistance of counsel claim cannot be made if the unasserted argument lacks merit); *United States v. Ealy*, No. 1:05-cr-58, 2007 WL 2904028, at *1 n.2 (W.D. Mich. Oct. 1, 2007) ("It is obvious, however, that an attorney has an ethical duty not to raise frivolous arguments . . . the failure to raise a frivolous argument cannot violate *Strickland* standards nor cause prejudice warranting relief.").

I conclude the Sixth Ground for Relief should be dismissed.

**Seventh Ground for Relief**

In his Seventh Ground for Relief, Mr. Gordon asserts that the trial court admitted "impermissible prejudicial testimony" that violated his Fifth and Fourteenth Amendment rights. (ECF #1 at PageID 14). His argument finds its genesis in the trial court's decision to admit testimony regarding Mr. Gordon's "alleged gang involvement," which he maintains "allowed the jury to convict on a basis other than that of the facts of the case violating Evid R 403A and 404 as well as the 5th and 14th [Amendments]." (*Id.*) The State concedes this issue is reviewable, but maintains it is not cognizable in federal habeas review because it involves solely an issue of state evidentiary law. (ECF #8, at PageID 51, 97).

"With regard to evidentiary rulings, the standard for habeas relief is not easily met." *Wilson v. Sheldon*, 874 F.3d 470, 475 (6th Cir. 2017). "[F]ederal habeas courts review state court evidentiary decisions only for consistency with due process." *Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001). "A state court evidentiary ruling will be reviewed by a federal habeas court only if it were so fundamentally unfair as to violate the petitioner's due process rights." *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001); *see also Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir.

2000) (such rulings "are usually not to be questioned in a federal habeas corpus proceeding") (quotation omitted). If a ruling is especially egregious and "results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003) (citing *Coleman v. Mitchell*, 244 F.3d at 542).

Importantly, however, as a general matter, "state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour*, 224 F.3d at 552 (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)). "Ultimately, states have wide latitude with regard to evidentiary matters under the Due Process Clause." *Wilson*, 874 F.3d at 476 (citing *Seymour*, 224 F.3d at 552).

Evidence of gang membership does carry some risk of unfair prejudice. *See United States v. Jobson*, 102 F.3d 214, 219 n.4 (6th Cir. 1996). But there is no outright prohibition on the admission of such evidence; rather, "evidence of gang affiliation can be sufficiently probative to survive a Rule 403 challenge." *United States v. Williams*, 158 F. App'x 651, 653 (6th Cir. 2005). Moreover, the Ohio Supreme Court – whose rulings controlled the trial court's decision in the first instance – has held that evidence of a defendant's gang affiliation is admissible pursuant to Ohio Evidence Rule 404(B) to show motive. *State v. Bethel*, 854 N.E.2d 150, 182 (Ohio 2006). This is particularly the case where "the interrelationship between people is a central issue." *Id.* (quoting *United States v. Gibbs*, 182 F.3d 408, 430 (6th Cir. 1999)).

In this case, Mr. Gordon does not identify, either in the Petition or in the Traverse, the specific evidence related to gang affiliation that he asserts prejudiced him in violation of his federal constitutional rights. Instead, his Traverse argues that this ground "is based on violations of fed R

404b and prejudicial other bad acts evidence which are clearly cognizable in federal habeas." (ECF #11 at PageID 1111). Of course, Rule 404(b) of the Federal Rule of Evidence does not constitute a constitutional right. Moreover, claims that evidence was admitted in violation of Ohio's state-law version of Rule 404 are not cognizable in federal habeas review. *See, e.g.*, *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (holding that petitioner's claim that state court violated Ohio R. Evid. 404(B) "is simply not cognizable on habeas review").

For these reasons, I find that the Seventh Ground for Relief should be dismissed.

**Certificate of Appealability**

A habeas petitioner may not appeal the denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability (COA) and specifies the issues that can be raised on appeal. 28 U.S.C. § 2253(c). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a district court has determined a petitioner's constitutional claim to be without merit, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong" before receiving a COA. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* A showing that the appeal would succeed on the claim is not required to granting of a certificate of appealability. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

46

Following my review of the record in this matter, I conclude that reasonable jurists could reaching differing conclusions with regard to the Fourth Ground for Relief set forth in Mr. Gordon's Petition. Indeed, I note the Eighth District reached one conclusion regarding the propriety of the order disqualifying Attorney Baker, and the Supreme Court of Ohio reached another – with one Justice dissenting from that court's decision overturning *Gordon I*. *See Gordon II*, 98 N.E.3d at 251 (O'Neill, J., dissenting without opinion). Thus, I conclude a COA should issue in this matter, limited to the Fourth Ground for Relief.

### CONCLUSION AND RECOMMENDATION

Following review, and for the reasons stated above, I recommend the Petition be **DISMISSED**. I further recommend pursuant to 28 U.S.C. § 2253 that Mr. Gordon be granted a certificate of appealability as to the Fourth Ground for Relief only.

Dated: August 22, 2022

_____
DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

### Objections, Review, and Appeal

**Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge. *See* Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.**

**Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not**

merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).

# EXHIBIT 1



89666047

# IN THE COURT OF COMMON PLEAS
## CUYAHOGA COUNTY, OHIO

THE STATE OF OHIO
    Plaintiff

Case No: CR-15-594287-A

Judge: NANCY MARGARET RUSSO

DEANDRE GORDON
    Defendant

INDICT: 2911.01  AGGRAVATED ROBBERY /FRM1 /FRM3
         2911.01  AGGRAVATED ROBBERY /FRM1 /FRM3
         2905.01  KIDNAPPING /FRM1 /FRM3
         ADDITIONAL COUNTS...

## <u>JOURNAL ENTRY</u>

DEFENDANT IN COURT.  COUNSEL AARON BAKER & MATTHEW BANGERTER PRESENT.
PROSECUTOR(S) ELEINA THOMAS PRESENT.
COURT REPORTER  PRESENT.
BOND SET AT $1,500,000.00. BOND TYPE: CASH/SURETY/PROP. BOND TERMS: COURT SUPERVISED RELEASE .
HOUSE ARREST IS ALSO A BOND CONDITION.  DEFENDANT TO HAVE NO PRIVILEGES WHILE ON HOUSE ARREST.
DEFENDANT'S PHONE PRIVILEGES ARE REVOKED.  DEFENDANT'S PREVIOUS BOND IS REVOKED BY THE COURT.

06/09/2015
CPDL2 06/09/2015 13:55:20

*Nancy Margaret Russo*
_____
Judge Signature            06/09/2015

HEAR
06/09/2015

RECEIVED FOR FILING
06/09/2015 14:57:46
NAILAH K. BYRD, CLERK

Page 1 of 1